J-A09022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.J.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1446 WDA 2023 |

Appeal from the Order Entered November 15, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  18 O.A. 2022

| | | |
|---|---|---|
| IN RE: ADOPTION OF T.L.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1447 WDA 2023 |

Appeal from the Order Entered November 15, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  16 O.A. 2022

| | | |
|---|---|---|
| IN RE:  ADOPTION OF L.N.M.-R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1448 WDA 2023 |

Appeal from the Order Entered November 15, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  17 O.A. 2022

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:              **FILED:  May 20, 2024**

A.G. (Mother) appeals the decision of the Greene County Orphans' Court, which terminated her rights to her four-year-old daughter L.N.M.-R., three-year-old son T.L.R., and two-year-old son M.J.R. (collectively, the Children), pursuant to the Adoption Act.  ***See*** 23 Pa.C.S.A. § 2511(a)(2), (a)(5), (b).  After careful review, we affirm.[1]

The relevant factual and procedural history is as follows.  The family has been involved with the Greene County Children and Youth Services Agency (CYS) since 2019, when the oldest Child, L.N.M.-R., was an infant.  At that time, CYS was concerned with L.N.M.-R.'s failure to gain weight.  L.N.M.-R. was temporarily placed with a family member under a safety plan.  The Agency then provided Mother and Father with services and education regarding the proper way to feed and nourish a baby.  L.N.M.-R. eventually returned to the parents' care, and CYS closed the case without court intervention.

CYS had similar involvement with the family in February 2021. The Agency learned that the then-six-month-old T.L.R. had been taken to the hospital due to "failure to thrive." he was approximately six months old.  The family received more services, and CYS closed its case.

Two months later, in April 2021, CYS received a report that T.L.R. was malnourished.  During the ensuing home visit, CYS discovered that the home

---

[1] The orphan's court also terminated the rights of T.R. (Father), who is the biological parent of T.L.R. and M.J.R., and the putative father of L.N.M.-R. Father's appeals are separately listed before this panel. ***See*** 1401, 1402, and 1403 WDA 2023.

was messy, cluttered, and smelled of rotten food, but it was not unsafe. The parents agreed to take T.L.R. to the hospital, and CYS eventually learned that T.L.R. still only weighed 11 pounds, 8 ounces. The Agency then obtained an order of protective custody and removed T.L.R. and L.N.M.-R. from their parents' care.

In May 2021, the juvenile court adjudicated both Children dependent. Mother and Father were "indicated" as perpetrators of abuse by CYS.[2] The parents' reunification objectives included: "do parenting classes, Parents as Teachers, High Fidelity Wraparound, mental health evaluation, and to follow through with any recommended services of those mental health evaluations." **See** Orphans' Court Order, 11/15/23, at *4 (not paginated), ¶24. Mother had only one positive drug test during the dependency proceedings – THC. However, Mother said she had concerns about Father's drug use after finding methamphetamines in the home.

In October 2021, Mother gave birth to the parties' third child, M.J.R. CYS removed M.J.R. after he was released from the hospital. The orphans'

---

[2] In its findings of fact and conclusions of law, issued contemporaneously with its final termination order, the orphans' court noted that neither parent appealed their "indicated" perpetrator status.

An "indicated" status is based on the child protective service agency's own assessment. **See, e.g., J.F. v. Department of Human Services**, 245 A.3d 658, 660-61 (Pa. 2021). The agency's own assessment that there was parental abuse or neglect is not, by itself, evidence of the same. To be sure, the facts underlying the agency's assessment may be the same facts supporting a court's finding of abuse or neglect; but we have cautioned courts not to inadvertently outsource their fact-finding function. **See Interest of A.E.**, 305 A.3d 982 (non-precedential decision).

court concluded that neither parent completed their reunification objectives, although Mother had progressed more than Father. Mother had completed some parenting classes, but not others. She had consistently engaged with some mental health services, but the efficacy of those services was in doubt. For instance, Mother and Father were ordered to attend perpetrator counseling services. Although Mother was unsuccessfully discharged by one counselor, she subsequently completed the course. Even so, the counselor opined that the services might not be effective, given Mother's lack of engagement and her propensity to shift blame onto others. Father never resumed counseling after being discharged. Importantly, the parents were offered 122 visits with the Children. Mother attended only 46, and Father attended only 36. During the visits, the parents had a difficult time caring for the Children and attending to their basic needs.

Meanwhile, the Children had progressed in their pre-adoptive foster home. Dr. Eric Bernstein, a licensed psychologist, performed the mental health evaluations and a bonding assessment of the parents. Dr. Bernstein concluded that there was an existing bond between the parents and the Children, but that the bond had been compromised due to the parents' inconsistency. Dr. Bernstein determined that the Children were also bonded to their foster parents and recommended that the parents' rights be terminated.

The orphans' court held a hearing on CYS' petitions to terminate the parents' rights on April 18, 2023. Nearly seven months later, on November

15, 2023, the orphans' court issued orders granting the petitions and terminating the parents' rights, pursuant to 23 Pa.C.S.A. § 2511(a)(2), (a)(5), and (b); the court denied CYS' petitions as to Section 2511(a)(1).[3]

Mother timely filed this appeal, and she presents two issues for our review:

> 1. Whether the orphans' court erred in finding that CYS had proved by clear and convincing evidence that it had established the statutory grounds for termination

---

[3] The orphans' court stated in its final order, issued contemporaneously with its findings of fact and conclusions of law, that the evidentiary hearing on the termination petitions was held on July 12, 2023. In actuality, the court held the hearing on April 18, 2023. However, the court evidently held the record open three additional months to allow an Agency's witness to respond to a rule to show cause as to why the witness should not be held in contempt for failure to appear at the termination hearing. It appears the witness eventually responded to the rule to show cause in July 2023, at which point the rule was dissolved.

We do not understand why the court opted to keep the record open; the court had already determined that the testimony was complete and none of the parties requested that the record remain open to allow the missing witness to testify.

The orphans' court then waited another four months to issue its final order. Instead of adjudicating the petitions, the court required the parties to submit proposed findings of fact and conclusions of law.

We remind the orphans' court of the urgency of juvenile matters, and specifically the need for permanency and the risks that children face when permanency is delayed. *See In re Adoption of K.B.*, 311 A.3d 1166, 1174-75 (Pa. Super. 2024). We have discovered no explicit orphans' court rule mandating prompt termination of parental rights decisions. However, the Rules governing juvenile matters, orphans' court matters, and custody matters all suggest diligence. *See, e.g.,* Pa.R.C.P. 1915.4(d)(requiring the trial judge to enter a custody decision within 15 days of the trial's conclusion, unless there be an extension for good cause, whereby the decision shall be entered no more than 45 days after the trial's conclusion).

> under 23 Pa.C.S.A. § 2511(a)(2) and (a)(5), to wit: under both subsections the agency failed to provide that Mother's incapacity cannot and will not be remedied within a reasonable period of time.
>
> 2. Whether the orphans' court erred in finding that the termination of Mother's parental rights was in the best interests of the Children given that the bonding assessment performed by Dr. Bernstein indicated an existing bond between the Children and Mother.

Mother's Brief at 7 (style adjusted).

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 265 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving…the termination of parental rights, the appellate court should

review the record for an abuse of discretion and for whether evidence supports that trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court.").

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **In re C.S.**, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting **Matter of Adoption Charles E.D.M., II**, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

**In re C.M.K.**, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted).

We need only agree with the lower court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm the court's decree. **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*); **see also C.S.**, 761 A.2d at 1201. Instantly, the court terminated Mother's rights under 23 Pa.C.S.A. § 2511(a)(2), (a)(5) and (b). We review the court's determinations under Section 2511(a)(2).

That subsection provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To terminate parental rights under Section 2511(a)(2), the Agency must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." **C.M.K.**, 203 A.3d at 262. The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. **In re Z.P.**, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. **Id.**

On appeal, Mother does not contest the first two steps of the Section 2511(a)(2) analysis. She limits her argument to the third criterion – namely, whether she remedied – or at least can remedy – the causes of the Children's removal. **See** Mother's Brief at 14. Mother essentially argues that she had done enough to stave off the termination of her parental rights: she followed

through with her mental health treatment; she engaged in parenting classes, except those that were unavailable to her because the Children did not reside in the home; and she completed perpetrator counseling. *See id*. at 12-14.

In its findings of fact and conclusions of law, issued contemporaneously with its termination order, the orphans' court opined:

> The record leaves no doubt that the parents have evidenced a continued incapacity and neglect and cannot provide the Children with the necessary parental care and subsistence; and they both are mostly unwilling or fail to recognize the conditions and causes of what needs to be done to remedy such.
>
> To be fair, Mother has certainly done more in this regard than Father, but her consistent failure to make any meaningful progress seems to be mainly due to her failure to recognize the issues that need remedied or show any accountability whatsoever. She appeared to mainly go through the motions of completing services and only felt she should because that's what the court required. There is no evidence whatsoever that Mother [] can or will remedy the situation.

Orphans' Court Order, 11/15/23 at *10 (not paginated) (style adjusted).

Upon review of the cold record, we find some aspects of Mother's argument to be persuasive. Mother seemingly made a fair amount of progress toward reunification, and thus we do not necessarily agree there was "no evidence whatsoever" of Mother's ability to remedy the causes of the Children's removal.

However, we reiterate that it is not our role to search the record for contrary conclusions. *See S.K.L.R.*, 265 A.3d at 1124. Our task is simply to review the record to see whether the evidence supports the trial court's

decision. Here, the court's observed that Mother was simply going "through the motions" and did not "show accountability." These inferences are supported by the record and are relevant to the larger question of whether Mother could remedy the causes that led to the Children's removal – *i.e.*, her ability to parent the Children without putting them at risk. There was real concern that Mother's failure to acknowledge the reasons for the removal meant that she did not understand how to keep the Children safe. Service providers questioned the efficacy of Mother's services, even though Mother completed some of the services. Most importantly, Mother attended less than half of the visits with the Children. These visits were her opportunity to allay the fears of the Agency and the trial court and demonstrate her commitment to the Children's safety. Sadly, Mother could not or would not do it. As a result, the orphans' court concluded that Mother cannot or will not remedy the causes which led to the Children's removal. The court's decision was not manifestly unreasonable. Thus, we conclude that termination under Section 2511(a)(2) was proper and that Mother's first issue lacks merit.

Having resolved the first step of the bifurcated termination analysis under Section 2511(a), we move to the second step under Section 2511(b), which is the subject of Mother's second appellate issue. That subsection provides:

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as

> inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

The "determination of a child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis," but "[c]ourts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (citing *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021) (further citations omitted); *see also C.M.K.*, 203 A.3d at 261-62 (the focus of Section 2511(a) is the conduct of the parent, whereas the focus of Section 2511(b) is the best interests of the child).

The plain language of Section 2511(b) mandates that, in assessing the petition to terminate parental rights, the "primary consideration" must be the child's "developmental, physical and emotional needs and welfare." *K.T.*, 296 A.3d 1105. It is well-established that the child's "emotional needs" and "welfare" include "intangibles such as love, comfort, security, and stability." *Id.* at 1106 (citing *T.S.M.*, 71 A.3d at 267). Recently, our Supreme Court held that this analysis also requires courts to consider, not only whether the children have a bond with their biological parent, but also whether the children are in a pre-adoptive foster home and whether they have a bond with their foster parents. *Id.* (citing *T.S.M.*, 71 A.3d at 268; *In re D.C.D.*, 105 A.3d 662, 677 (Pa. 2014)).

Mother argues that the orphans' court erred when it found that termination would best serve the Children's welfare under Section 2511(b). Mother cites Dr. Bernstein's conclusion that the Children had a bond with Mother. **See** Mother's Brief at 17.

The orphans' court recognized the existence of the bond, but noted Dr. Bernstein's conclusion that the bond was compromised by Mother's lack of consistency:

> Again, as stated above, the court believes [Mother] love[s] [her] Children and does not doubt that there is some level of bond between [her] and the Children. Dr. Bernstein references and acknowledges this, but also indicated the bond is compromised. And bond alone cannot guide the Court's decision.
>
> The best interests of the Children is clearly in their pre-adoptive foster home. This home provides a permanency that these Children deserve and provides a stability and consistency that [Mother] would never be able to provide. The Children have appropriate, uncompromised bonds with their foster families, who have provided the care and support necessary for the Children to thrive.

Orphans' Court Order at *13-14.

In looking at the bond with the parent, the Supreme Court clarified the scope of the parent-child bond inquiry in the overall Section 2511(b) analysis. First, the Supreme Court reiterated that trial courts must determine whether the child has a bond with the biological parent, the nature of that bond, and effect that severance of the bond would have on the child. **Id.** at 1109 (citing **T.S.M.**, 71 A.3d at 267, 269). The question for the court is whether termination would sever a necessary and beneficial bond. "[T]o grant

termination when a parental bond exists, there must be clear and convincing evidence that the bond is not necessary and beneficial." *Id.* at 1114.

The question is not merely whether severance would have an adverse impact on the child.[4]  The Supreme Court held that the trial court "must not truncate its analysis and preclude severance based solely on evidence of an 'adverse' or 'detrimental' impact to the child." *Id.*

Moreover, our Supreme Court cautioned the parent-child bond inquiry is but one factor to consider under a proper Section 2511(b) analysis. *Id.* at 1111 (citing *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)).  "[B]ond, *plus* permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and

_____

[4] The Court recognized that severance of *any* bond could have an "adverse impact" and upset the child.  Therefore, courts must focus on the *nature* of the bond commensurate with the impact of severing that bond:

> Severance of a "necessary and beneficial" bond would predictably cause more than the "adverse" impact that, unfortunately, may occur whenever a bond is present.  By contrast, severance of a necessary and beneficial relationship is the kind of loss that would predictably cause "extreme emotional consequences" or significant, irreparable harm.  Moreover, by evaluating the impact of severance to determine if it will impose more than an adverse or detrimental impact, courts correctly refine their focus on the child's development and mental and emotional health rather than considering only the child's "feelings" or "affection" for the parent, which even badly abused and neglected children will retain.

*K.T.*, 296 A.3d at 1109-1110 (footnotes and internal citations omitted).

emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *Id.* at 1109 (emphasis added). The Supreme Court held that trial courts have discretion to place appropriate weight on each factor before making a decision under Section 2511(b). *Id.* at 1113.

With this standard in mind, it is clear that the sheer existence of a parental bond between Mother and the Children is insufficient to defeat a termination under Section 2511(b). Mother challenges no other aspect of the Section 2511(b) inquiry, but we note that the orphans' court's conclusions are properly situated within the law and are supported by the record. Mother's second issue is without merit.

In short, we conclude the orphans' court did not err or abuse its discretion when it determined that CYS provided sufficient evidence warranting the termination of Mother's rights under 23 Pa.C.S.A. § 2511(a)(2) and (b).

Orders affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/20/2024